## PICTON S. S. CO., Limited, v. GEORGE E. WARREN CORPORATION.

### No. 666.

District Court, D. Massachusetts.

Jan. 7, 1938.

G. Philip Wardner, of Boston, Mass., for libelant.

Burnham, Bingham, Pillsbury, Dana & Gould, of Boston, Mass., for respondent.

McLELLAN, District Judge.

The libelant seeks to recover its expenses for taking its steamship to Lynn, Mass., under circumstances hereafter stated.

The facts upon which the case was heard appear in the agreed statements of facts entitled, respectively, "Statement of Facts Agreed Upon" and "Additional Facts Agreed Upon."

The agreed facts show, among other things, that the libelant entered into a charter party dated November 15, 1933, with the Anglo-Soviet Shipping Company, Ltd., acting as agent for Amtorg, New York, a copy whereof is annexed thereto. Pursuant to the charter party, the ship loaded coal at Mariupol, for which the ship's master issued a bill of lading acknowledging shipment of the coal by Amtorg Trading Corporation, Moscow, for delivery at Boston to the order of Brown, Shipley & Co., Ltd., of London. The bill of lading was indorsed by Brown, Shipley & Co., Ltd., to the respondent, George E. Warren Corporation, a Massachusetts corporation, which became the consignee of the cargo. The charter party contained an option to load the balance of the cargo elsewhere, and this was done. A similar bill of lading was issued for the additional cargo and was so indorsed that the respondent became the consignee thereof. During the voyage it was agreed that the ship should be diverted from Boston to Portland, Me.

The charter party provided that the charterers should "have the option of discharging at two safe ports in the United States * * * in which case rate of freight to be 6 d. (six pence) per ton extra." The parties also agreed that "orders for a second port of discharge, if decided, to be given not later than twenty-four hours after arrival of steamer at first discharging port."

On January 31, 1934, the charterer named Boston as the second port of discharge. The ship arrived at Portland on February 9, 1934, and finished her discharge there on February 13, 1934. Within 24 hours after the ship arrived at Portland, the *respondent* ordered the ship to go to Lynn as the second port of discharge. While the ship

was at Portland and before it was ordered to Lynn, "it was made known by the libellant to the respondent" that the vessel had been chartered from Boston. There were no outbound charters available from Lynn. Thereafter, on February 15, 1934, the ship's agents wrote a letter, of which a copy is annexed to the agreed facts, protesting against going to Lynn and stating in substance that, if going to Lynn was insisted upon, the libelant would require compensation therefor. (See also the master's letter to Amtorg Trading Corporation, annexed to the agreed statement of facts.) After the receipt of the letter to the respondent, the ship proceeded to Lynn. While the agreed facts are not very specific as to whether, after the foregoing letters had come to the respondent's attention, it still insisted that the ship proceed to Lynn, this becomes unimportant because at the oral argument counsel agreed that, if neither the charterer nor the respondent had the right to change the destination to Lynn, the libelant is entitled to recover the expenses incident thereto.

It was argued on behalf of the respondent that such a right to change the ship's destination continued until the lapse of 24 hours after its arrival in Portland. The option so continued unless exercised before that time. Once the charterer exercised its option under clauses 30 and 31 of the charter party, it was as if the original contract provided for discharging at Portland and Boston. The respondent urges that a new consideration or something in the nature of an estoppel is essential to the conclusiveness of such an election. Nothing more is needed to make the election conclusive than its making, which imposes upon the owner the duty in accordance with its original contract to do as directed. The libelant was bound to proceed to two ports, not three. When charterers elected Portland and Boston, the libelant was under no obligation to send the ship to Lynn. The effect of the respondent's insistence upon a discharge at Lynn, to which the respondent was no longer entitled, coupled with the libelant's agent's letter above referred to, and with the fact that the ship proceeded to Lynn, imposed upon the respondent an obligation to pay the extra expense incurred by the libelant.

A decree is to be entered for the libelant in such amount in United States currency as, based upon the agreed facts, covers the extra expense involved in the discharge at Lynn instead of at Boston.